## LIBERTY HALL ASSOCIATION *vs.* HOUSATONIC MUTUAL FIRE INSURANCE COMPANY.

A policy of insurance, expressed to be " from·the first of August 1854 to the first of August 1854," may be shown, by reference to the indorsements made by the insurers on the back of the policy, to the application which is made a part of the policy, and to the amount of the premium and deposit note, to be an insurance for five years from the 1st of August 1854.

A waiver of the right to any information upon the matters inquired of in one of the interrogatories to an applicant for an insurance may be inferred from the issuing of a policy upon an application in which this interrogatory is unanswered; although the applicant has answered in the negative another interrogatory, whether "there are any other circumstances affecting the risk."

Evidence that a policy of insurance, intended as a substitute for a policy issued by another company (to whose business these insurers had succeeded) upon a previous application, was sent by these insurers, with a blank application and deposit note, to the agent of the assured, who retained the new policy, and signed the application and deposit note in blank, and returned them to the insurers, and did not see them again until they were produced by the insurers, with the blanks filled, at the trial of an action on the policy, will not warrant the inference that the assured was not responsible for the answers contained in the application, except to the extent to which the insurers, in filling the blanks, exceeded the implied authority conferred upon them by the assured by so returning the blank application.

ACTION OF CONTRACT on a policy of insurance against fire, alleged in the declaration to have been made by the defendants to the plaintiffs on " Liberty Hall," in New Bedford, for five years, namely, commencing on the 1st of August 1854 and ending on the 1st of August 1859, to recover a loss which happened on the 9th of November 1854.

At the trial in the court of common pleas, before *Morris*, J., the plaintiffs gave in evidence a policy, dated August 1st 1854, whereby the defendants, in consideration of the plaintiffs' becoming a member of their corporation, and paying thirty one dollars as premium, and giving a deposit note for sixty two dollars, insured the plaintiffs " from the first day of August in the year 1854 at noon, until the first day of August in the year 1854 at noon, the sum of two thousand dollars on Liberty Hall, being not more than three fourths of the value of the property described in the application of the said Liberty Hall Association, dated the 1st day of August 1854, and lodged with the secretary of

this company, and which said application shall form part of the contract, to be taken in connection with this policy." Among the indorsements on the policy were these : " Date, 1st day of August 1854.   Expires 1st day of August 1859."

The by-laws of the company, annexed to the policy, and to which it was made subject, enumerated, among the " matters which will vacate a policy," the following : " If the application shall not contain a full, fair and substantially a true representation of all the facts and circumstances respecting the property, so far as they are within the knowledge of the assured, and material to the risk."

The application referred to in the policy was signed by the plaintiffs' treasurer, and contained the following interrogatories and answers : " 4. Distance and direction from each other, or from other buildings within five rods, and for what purposes are said buildings used ? "   *Answer.*   " Fifteen feet north, dwelling-house.  West, nearly adjoining, meeting-house."   " 11. How are the buildings occupied ?   How many tenants ? "   This was not answered.   " 14. If there are any other circumstances affecting the risk, state them."   *Answer.*   " No."   " 15. To what time is insurance desired ? "   *Answer.*   " Five years."   And the applicants, in conclusion, " covenant and agree with said company that the foregoing is a correct description of the property requested to be insured, so far as regards the risk and value of the same ; and in case of insurance hold themselves bound by the act of incorporation and by-laws of said company."

The defendants objected to the admission of the policy in evidence, on the ground that on its face it purported to expire on the 1st of August 1854, and so varied from the declaration, and that, as its operation was to commence and expire at the same time, it was a void policy.   But the court overruled the objection, and instructed the jury " that it was for them to determine, upon all the facts properly in proof, at what time the policy upon its face was made to expire, whether in 1854 or 1859 ; that if, in fact, the policy began and ended at the same time, it could not operate to protect the plaintiffs, and was a void policy ; and that, in determining the question, it was com-

petent for the jury to consider the indorsement upon the policy, and the application referred to in it, and any other facts in evidence which tended to show when, in fact, and according to the meaning of the parties, the contract of insurance began and ended." At that stage of the trial there was no extrinsic evidence showing by whom the indorsement on the back of the policy was made; but it subsequently appeared that it was received by the plaintiffs from the defendants in the same condition as when produced at the trial.

There was evidence that the building insured was a large three story wooden building, containing, besides a large hall, which was used for various purposes, a carpet shop, a shoe shop, tailor's shop, eating saloon, confectioner's shop, the city liquor store, a telegraph office, a club room, and two daguerreotype rooms. The defendants called experts, who testified " that the use of the building insured in the manner before stated made it a more hazardous risk, and worth more to insure, than it would be were it occupied as they should suppose it to be on reading the application ;" and " that halls were a kind of property known as such, and insured as such, by insurers."

There was also evidence that, when the policy was made, there were several wooden buildings within five rods of Liberty Hall, not disclosed in the application, but further off than those disclosed, and on the other side of the street from the building insured ; and that the building called a " meeting-house " in the application was used as an eating-house, and an addition had since been made to it for a kitchen, which extended within a few inches of the hall.

The defendants also introduced evidence tending to show that the buildings not disclosed in the application, and the use of the building called a " meeting-house " as an eating-house, rendered the property insured more hazardous, and would increase the rate of insuring it ; and their managing officers testified that, had the true condition of the property insured been stated in the application, they would not have insured it at any rate of premium.

The plaintiffs offered evidence tending to show that a policy

had been issued upon a previous application on the same prop-
erty by the Farmers' and Manufacturers' Insurance Company,
who ceased to insure about the date of the policy in suit, and
were succeeded by the defendants, who were organized about
the same time, with the same president and secretary; that the
policy in suit, filled up and signed, was sent from the defend-
ants' office to the plaintiffs' agent, together with a blank applica-
tion and deposit note; that the plaintiffs' agent retained the
policy, and signed the application and note, in blank, and re-
turned them to the defendants in that condition, and did not see
them again until they were produced at the trial with the blanks
filled.

The defendants contended "that the untrue statements of the
plaintiffs in their application, respecting the buildings within five
rods of the insured property, and their use; and the occupation
and use of the building insured for other purposes than those
for which halls are used; were such material misrepresentations
by the plaintiffs of the property to be insured, as should render
the policy void."

The court instructed the jury, "that, in the absence of fraud
on the part of the plaintiffs and their agent, if the defendants,
having put a question respecting the use and occupation of the
building insured, to be answered by the plaintiffs' agent in the
application, saw fit to issue a policy without any answer to said
question, it would be competent for the jury to infer from this
circumstance a waiver of any information upon this point, and
that the answer to the 14th interrogatory in the application
would not vary this result; that, in respect to the existence and
occupation of other buildings within five rods, which were not
disclosed, if they were material to the risk, the policy would not
be binding upon the defendants, and this action could not be
maintained, unless the jury should find the further fact con-
tended for by the plaintiffs, to wit, that the defendants received
from the plaintiffs' agent the application signed by him in blank,
and upon their own information and corporate responsibility
caused the answers to be inserted which are now found in the
application; but that, in order to affect the defendants with

responsibility for said answers, it was not enough that they were inserted by some officer or agent of the defendants, unless it should appear that he was authorized by the defendants to do this particular act."

The jury returned a verdict for the plaintiffs, and the defendants alleged exceptions.

*C. B. Farnsworth*, for the defendants.

*T. D. Eliot*, for the plaintiffs.

BIGELOW, J. 1. Taking this whole contract together, it was clearly an insurance for five years from the 1st of August 1854. This is shown by the application, which is made part of the policy, from which it appears that the plaintiffs applied for insurance for five years from that date ; by the indorsement on the back of the policy, in which it is stated that the policy expires on the first day of August 1859; and by the amount of the premium and deposit note. The insertion, in the body of the policy, of the date of August 1st 1854, as the time to which the policy was to extend, was manifestly a clerical error, which other parts of the contract afford the means of correcting. The defendants are not therefore aggrieved by the ruling of the court on this point.

2. The defendants, having issued the policy without requiring any answer to the eleventh interrogatory contained in the application, concerning the occupation of the building insured, it was fair to infer that they waived information on that point; and having done so, they cannot now avoid the policy by proof that the premises were used for a hazardous purpose or business. The general interrogatory, numbered fourteen, by which the applicant is asked, " if there are any other circumstances affecting the risk," to state them, clearly refers to facts not referred to or comprehended within the previous interrogatories ; and cannot be construed to include matters about which the applicant has been specially interrogated by the prior questions propounded to him, and which he has answered or omitted to answer. It cannot therefore be held to embrace any representation concerning the occupation of the building insured, that

having been the subject of specific inquiry in the eleventh inter-rogatory. Upon this point, the instructions were correct.

3. Upon the facts stated in the bill of exceptions, we are of opinion that the remaining instruction to which exception was taken was erroneous. There is no aspect of the case, as now presented, which can justify the inference, that the plaintiffs are not responsible for the answers contained in the application. The signature and authority of the plaintiff's agent being admitted, any evidence to show that it was not their application would be incompetent, because it would tend to control the legal effect of a written paper by parol proof. Upon the facts in evidence, it was clearly the application of the plaintiffs. By sending it to the defendants signed in blank, an authority was implied, by which they were authorized, in behalf of the plaintiffs, to fill it with appropriate answers to the questions therein contained. This conclusion is greatly strengthened by the additional fact in the case, that a prior application of the plaintiffs for insurance on the same premises was in possession of the defendants, and that this policy was intended as a substitute for a previous one on the same property, issued on that application. The evidence was therefore plenary that the plaintiffs intended to authorize the defendants to fill the blanks in the application which they sent, bearing the signature of their agent. There being no suggestion of any fraud on the part of the defendants in filling the blanks, or that they inserted any answers which they knew to be false, there was no ground on which the plaintiffs could deny that the application was binding on them.

The true question for the jury on this part of the case was, whether the defendants, in filling the blanks, had exceeded the implied authority conferred on them by the plaintiffs. If they had, then to that extent, and no further, the plaintiffs were absolved from all responsibility for the representations contained in the application.            *Exceptions sustained.*